UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF MICHIGAN

SOUTHERN DIVISION

MICHAEL OLIVER,

Plaintiff,

vs. CASE NO. 20-12711

HON. LAURIE J. MICHELSON

DONALD BUSSA, in his
Individual and official capacity,
And the CITY OF DETROIT,
Jointly and Severally,

Defendants.

---

The Deposition of STEPHEN CASSANI,
Taken in Carleton, Michigan,
Commencing at 4:39 p.m.,
Tuesday, September 27, 2022,
Before Laurie R. Mayer, CSR-5385.

REMOTE APPEARANCES:

DAVID A. ROBINSON
Robinson and Associates, P.C.
28145 Greenfield Road, Suite 100
Southfield, Michigan 48076
(248) 423-7234
davidrobinsonlaw@gmail.com

Appearing on behalf of the Plaintiff.

PATRICK M. CUNNINGHAM
City of Detroit Law Department
2 Woodward Avenue, Suite 500
Detroit, Michigan 48226
(313) 237-5032
cunninghamp@detroitmi.gov

Appearing on behalf of the Defendants.

AUDREY FORBUSH
Plunkett Cooney
111 East Court Street
Suite 1B
Flint, Michigan 48502
(810) 342-7014
aforbush@plunkettcooney.com

Appearing on behalf of Stephen Cassani.

# TABLE OF CONTENTS


| WITNESS | PAGE |
|---|---|
| STEPHEN CASSANI | |
| EXAMINATION | |
| BY MR. CUNNINGHAM: | 4 |
| EXAMINATION | |
| BY MR. ROBINSON: | 27 |
| RE-EXAMINATION | |
| BY MR. CUNNINGHAM: | 30 |


## EXHIBITS


| EXHIBIT | PAGE |
|---|---|
| EXHIBIT 1 (retained by counsel) | |
| EXHIBIT 2 | |
| Preliminary Examination (attachment) | |
| Warrant Felony (attachment) | |

Carleton, Michigan
Tuesday, September 27, 2022
4:39 p.m.

STEPHEN CASSANI,

was thereupon called as a witness herein, and after having first been duly sworn to testify to the truth, the whole truth and nothing but the truth, was examined and testified as follows:

MR. CUNNINGHAM: Good afternoon, Mr. Cassani. My name is Patrick Cunningham, and I'm an attorney representing the City of Detroit and Detective Donald Bussa in a lawsuit filed by Michael Oliver.

EXAMINATION

BY MR. CUNNINGHAM:

Q. Can I ask you to state your name for the record, please?
A. Stephen P. Cassani.
Q. Mr. Cassani, have you ever given deposition testimony before?
A. Yes.
Q. How many times?
A. I don't remember.
Q. I'm just going to refresh your recollection about the

way that depositions operate. It's just questions and answers. Because we're taking down a transcribed record of your testimony, I need you to give answers that are verbal, out loud in words. In normal conversation, I might ask you a question. You might nod your head. You might shake your head. You might say uh-huh. You might say uh-uh, and I would know what all those things meant, but they're difficult to transcribe. So if you could just please do your best to give your responses verbally in words, it will make it a lot easier; is that fair?
A. Yes, sir.
Q. The other thing is if I ask a question and you don't hear or understand the question. On Zoom, it's particularly difficult because sometimes there will be a glitch here and there and will make that question hard to understand. If that happens, please let me know, and I'll do my best to ask a clearer question. If I ask you a question and you give an answer, I will assume that you heard and understood the question; is that fair?
A. Yes, sir.
Q. How old are you, Mr. Cassani?
A. 50.
Q. Mr. Cassani, did you graduate from high school?

A. Yes.
Q. Do you have any education after high school?
A. Yes.
Q. Have you -- did you attend college?
A. No.
Q. What education did you receive after high school?
A. I have an associate's degree, I have a bachelor's degree, and I have a master's degree.
Q. Where did you get your associate's degree?
A. Schoolcraft College.
Q. And is that in any particular discipline?
A. Business transfer.
Q. And where did you get your bachelor's degree from?
A. University of Michigan.
Q. And what is your bachelor degree in?
A. Bachelor's in business administration.
Q. And where did you get your master's degree?
A. University of Michigan.
Q. What is your master's degree in?
A. Master's in business administration.
Q. Okay. Are you currently employed?
A. Yes.
Q. Where are you currently employed?
A. Detroit Public Schools Community District.
Q. And what do you do for the Detroit Public Schools?

A. I am a teacher.
Q. And what school do you teach at?
A. Cass Technical High School.
Q. How long have you been a teacher with the Detroit Public Schools?
A. Five years.
Q. Would that take us back to 2018 (sic)?
A. Yes.
Q. Okay. And were you a teacher with the Detroit Public Schools in May of 2019?
A. Yes.
Q. And what school were you teaching at in May of 2019?
A. The Westside Academy for Information Technology and Cyber Security.
Q. And what were you teaching in May of 2019?
A. Computer and business subjects.
Q. Not -- this high school, right?
A. Yes.
Q. Was there a particular grade that you taught, or were there a mix of grades in your classes?
A. There was a mix of grades in the classes.
Q. Okay. And in May of 2019, did you have an incident where a cell phone was taken from you outside of Westside Academy?
A. I don't remember if that was the exact date but, yes,

in May of 2019.
Q. Okay. So I guess my first question was, do you remember the exact date?
A. No.
Q. Do you remember that it was in the year 2019?
A. Yes.
Q. Do you remember that it was in the month of May?
A. Yes.
Q. Okay. And could you describe that incident for me? Where were you when the incident took place?
A. In my car.
Q. And where was your car located?
A. My car was on, I want to say Warren, Warren Avenue. It could have been West Grand Boulevard. I haven't been that way in quite a while, so I don't remember how the streets go over there.
Q. Your car was on the street though?
A. Yes.
Q. And had you driven it off school property at that point?
A. Yes.
Q. Okay. And at the time of the incident, had you stopped your car?
A. Yes.
Q. Okay. So you're stopped in your car on the street,

and then what happens?
A. There was a large melee of perhaps 100 students. I should say 100 young people that were fighting and engaged in watching the fighting, and I called 911.
Q. And what happened after you called 911?
A. I was placed on hold.
Q. Did you eventually speak to a 911 operator?
A. Yes.
Q. And you placed a report?
A. I did, and they said they were aware of the incident.
Q. Okay. And did that conversation conclude?
A. Yes.
Q. And what did you do after that conversation concluded?
A. I started fumbling around with my phone to attempt to capture a video.
Q. Were you able to capture a video?
A. Not as much as I thought I had.
Q. Okay. It's one of the things where you're holding up your phone thinking you're recording but you're really not?
A. Yes, sir.
Q. Okay. How long do you think you were holding your phone up without it recording?
A. I don't remember.
Q. You did capture some video?

A. Yes.
Q. Was there anybody in the car with you?
A. No.
Q. What happened after you started recording video successful?
A. Two males, one of whom was Andre Jackson, and another male whose identity I did not know, approached the vehicle, and the other male who was not Andre Jackson reached into the vehicle and grabbed the cell phone out of my hand.
Q. Okay. And what happened after he took the cell phone away from you?
A. I believe some of the students said, hey, that's a teacher, and I got out of the phone -- and I got out of the car, and he threw the cell phone back at me.
Q. And was the cell phone damaged in the process?
A. Yes.
Q. How was it damaged?
A. Cracked screen and busted case.
Q. Do you believe that Andre Jackson witnessed this happen?
A. Yes.
Q. So besides you, Andre Jackson and the guy who smashed the phone, is there anybody else who you believe witnessed this incident?

A. (Inaudible.)
(Discussion off the record at 4:50 p.m.)
(Back on the record at 4:50 p.m.)
THE WITNESS: Can you repeat the question?
BY MR. CUNNINGHAM:
Q. Sure. Besides you and Andre Jackson and the guy who smashed the phone, are you aware of anybody else who witnessed this incident?
A. There was a group of approximately 30 to 40 students in the vicinity.
Q. Do you know any of their names?
A. I don't remember.
Q. And after that happened, did you call the police again?
A. No, the police arrived on scene.
Q. In response to the original 911 call?
A. Yes.
Q. Okay. And did you speak with the police when they arrived?
A. Yes.
Q. Do you know the name of the officer that you spoke to?
A. No.
Q. Do you recall what the officer looked like?
A. No.
Q. Do you recall how many officers you spoke to?

A. Not precisely, no.
Q. What do you mean by not precisely? Do you have some recollection?
A. I have an estimate, but I can't be sure.
Q. What's your estimate?
A. Three to five.
Q. Okay. And I appreciate the fact that that is an estimate. That's not an exact number that you recall; is that accurate?
A. Correct, yes.
Q. Do you recall what you told the police?
A. I relayed to them the incident, and I pointed out the perpetrator who was walking away.
Q. Okay. After that day, when's the next time you spoke to a police officer about this incident?
A. When Detective Bussa called me at some future point. I can't remember the exact date.
Q. Okay. So Detective Bussa called you on the telephone?
A. Yes.
Q. And what did you and Detective Bussa discuss?
A. He basically asked me to recount what happened as best I could. And that's when I said, well, I have a video of exactly who did it, of the actual incident of the perpetrator grabbing the phone out of my hand. And I agreed to send him that video along with Andre Jackson

who was the other person in the video that was known to me.
Q. So what did you end up sending to Detective Bussa?
A. I sent an e-mail with a video attached to it as an attachment, as well as a two-sentence narrative statement that said that Andre Jackson is the other person in the video, as well as I told him that while I was on the phone.
Q. Okay. After that first initial phone call with Detective Bussa, what was your next contact with the Detroit police related to this crime?
A. When Detective Bussa called me and told me I needed to come down for an identification.
Q. And did you go down for an identification?
A. I did.
Q. Where did that take place?
A. I don't remember. It was at a police station.
Q. Okay. So what happened when you arrived at the police station?
A. I was greeted by Detective Bussa. He informed me that they had a photo array and that they would like me to point out the person that I think it is in the photo array.
Q. Okay. Was it Detective Bussa or someone else who administered the lineup to you?

A. There was another police officer who administered it. Detective Bussa was also present.
Q. Did Detective Bussa tell you anything about the lineup you were looking at?
A. That -- just that it wasn't a trick, that the perpetrator was in the lineup.
Q. Did anyone suggest to you who you should pick out of the lineup?
A. No.
Q. Did anyone suggest that you had to pick anyone out of the lineup?
MR. ROBINSON: Objection to the form of the question. It's leading.
BY MR. CUNNINGHAM:
Q. You can answer.
A. Can you repeat the question again?
Q. Sure. Did anyone suggest that you had to pick anyone out of the lineup?
A. I don't remember.
Q. Can you recall any suggestion anyone made to you about the lineup?
A. I found it difficult initially because the pictures were in black and white and quite small. And while I was viewing the lineup, one of the officers present, and I don't recall who said it's not a trick.

Q. Did he say anything besides it's not a trick?
A. I don't recall, and I'm paraphrasing.
Q. Okay. Can you recall anyone telling you that the perpetrator was in the lineup?
MR. ROBINSON: What was that question, Pat?
BY MR. CUNNINGHAM:
Q. Can you recall whether anyone told you the perpetrator was in the lineup?
A. I don't remember.
Q. What you can remember is that somebody said something to the effect of it's not a trick?
A. The implication, as I understood it, was that the perpetrator was in the lineup.
Q. Okay. But did anybody say that to you?
A. I don't think anyone used those exact words, and if they did, I don't remember. But I remember how I felt, and how I felt was they were trying to indicate that they weren't trying to trick me, that the person that they thought it was was in that lineup.
Q. And did you pick somebody out of the lineup?
A. I did.
Q. Why did you pick somebody out of the lineup?
A. Well, I was relying on my memory, and I thought that I identified the person. From my memory, that person number 5 was the one.

Q. Did anyone suggest to you that Michael Oliver was one of the people in the lineup?
A. No.
Q. I'm going to try and share my screen with you. Let's try this. Can you see a video, or are you still looking at my desktop?
A. Yes, I can see a video.
MR. CUNNINGHAM: Okay. All right. I'm going to play this video for you. I think it's only about a minute and a half long or something like that.
(Off the record at 5:02 p.m.)
(Back on the record at 5:02 p.m.)
BY MR. CUNNINGHAM:
Q. Did you recognize that video?
A. Yes.
Q. Is that the video that you provided to the police department of the incident?
A. Yes.
MR. CUNNINGHAM: We will mark that as Exhibit 1.
BY MR. CUNNINGHAM:
Q. After you picked out a face from the lineup, what happened next?
A. I left.
Q. Okay. And what was your next involvement with respect

to that crime?
A. I believe I got a call from someone at the prosecutor's office who asked me to appear at a preliminary examination.
Q. Okay. And you did appear at a preliminary examination?
A. I did.
Q. Okay. And did you testify there?
A. I did.
Q. Were you placed under oath to tell the truth?
A. Yes.
Q. And did you tell the truth to the best of your ability?
A. I did.
Q. And at the preliminary examination, was Michael Oliver there in person?
A. Well, there was a man that they identified as Michael Oliver. I would have -- I didn't have any personal knowledge because I had never seen the person before in my life.
Q. Okay. Was there somebody seated as a criminal defendant in the case?
A. Yes.
Q. And did you identify that person as the person who had taken your cell phone?

A. Yes.
Q. And when you made that identification, it was true to the best of your knowledge and belief?
A. Absolutely. Otherwise, I wouldn't have made it.
MR. ROBINSON: Object to form.
MR. CUNNINGHAM: I can ask that differently.
BY MR. CUNNINGHAM:
Q. When you made that objection (sic), was it true to the best of your knowledge and belief?
MR. ROBINSON: Same objection, same objection.
Go ahead.
MR. CUNNINGHAM: I'm sorry -- could you -- I'm going to ask again. Mr. Robinson, I will give you another objection on the basis of form.
BY MR. CUNNINGHAM:
Q. Mr. Cassani, when you made that identification, was it true to the best of your knowledge and information?
MR. ROBINSON: Go ahead.
A. Yes.
BY MR. CUNNINGHAM:
Q. Okay. I'm going to ask you to look at another document. Mr. Cassani, do you see a document there that says investigator's report on it?

A. Yes, I see the top part of it.
Q. Sure. I'm going to scroll down for you a little bit.
Dave, I'm going to mark this as Exhibit 2.
MR. ROBINSON: Okay.
BY MR. CUNNINGHAM:
Q. Mr. Cassani, can you see the part where it says details of investigation?
A. Yes.
Q. I'm going to read that first sentence there under circumstances to you and make sure -- can you just make sure I'm reading it right? On May 5th, 2019, victim, Stephen Cassani, was in his vehicle on West Warren in front of a vacant lot, 3864 West Warren, where he observed a large fight. Is that a true statement?
A. Yes.
Q. Mr. Cassani started filming this incident on his iPhone 6 cell phone when he was approached by the suspect later ID'ed as Michael Oliver who reached into Mr. Cassani's vehicle and grabbed his cell phone from his hand and threw it. Is that a true statement?
A. Yes.
Q. Breaking the phone case and screen. It's true -- is it true that the phone case and screen were broken?
A. Yes.

Q. I'm looking now at investigation. Mr. Cassani was able to recover the video he took on his cell phone and provided it to me. This is written by Detective Bussa. Is that a true statement?
A. Well, I don't know what Detective Bussa did or didn't do.
Q. Well, it says, Mr. Cassani was able to recover the video he took on his cell phone. Is that part true?
A. Yes.
Q. And it says you provided it to Detective Bussa; is it true that you provided it to Detective Bussa?
A. Yes.
Q. Okay. Now it says that Detective Bussa interviewed you and took a written statement. Is it true that Detective Bussa interviewed you and took a written statement?
A. I assumed he took it.
Q. Okay.
A. I assume he took a written statement. I don't -- I honestly don't remember.
Q. Do you recall that he interviewed you?
A. The only thing I recall was that we did have a conversation on the telephone.
Q. Okay. It says here that you picked out of the lineup the person in spot number 5 in a six-pack photo

lineup; is that true?
A. Yes.
Q. Do you still believe that Michael Oliver is the person who stole and damaged your cell phone?
A. No.
Q. What changed your mind on the subject?
A. I met with the prosecutor after the preliminary examination where I had an opportunity to view the video that I had taken placed against a full color photo of Mr. Oliver. Not only were there several features that were -- facial features that were different. It was just clearly a different individual.
Q. What was the name of the prosecutor?
A. I don't remember.
Q. Was it a man or a woman?
A. A man.
Q. If I say Brian Serma (phonetic), does that refresh your recollection?
A. No.
Q. I'm going to share another document with you. All right. Are you able to see what's titled arrest report?
A. Yes.
Q. And the date on this arrest report is May 6th, 2019.

Do you see where it says that?
A. Yes.
Q. All right. And it's identified as an arrest report of Oliver, Michael Owens. Do you see that name where it says name on the arrest report?
A. Yes.
Q. Have you ever seen this photograph of Michael Owens Oliver taken on May 6th, 2019 before?
A. I don't believe so, no.
Q. All right. Mr. Cassani, can you see the video again?
A. Yes.
Q. I'm going to just scroll through it a little bit. Here it looks like where -- can you see on the left-hand side where it says we're 15 seconds into the video?
A. Yes.
Q. Okay. Is Andre Jackson one of these two people depicted in this video?
A. Yes, he's the gentleman on the right.
Q. And so he's the one in a black tank top?
A. Yes.
Q. And after your cell phone was stolen and smashed, did you talk to Andre Jackson about that incident?
A. No, I don't think I did. I can't remember. This was three years ago.

Q. Did anybody -- did you have a conversation with anyone other than the Detroit police where someone identified Michael Oliver to you as the person in this video?
A. No.
Q. I'm going to show you another document. Mr. Cassani, can you see a document that says document certification at the top of it?
A. Yes.
Q. Okay. And can you now see a document that says preliminary examination on it?
A. Yes.
Q. All right. And this preliminary examination transcript was taken on August 26th, 2019 in the case of People of the State of Michigan versus Michael Oliver, with Steve Cassani as a witness. That's you, right?
A. Yes.
Q. So I'm going to ask you to look at the transcript starting on page 14 here.
MR. ROBINSON: Patrick, I'm going to place an objection. I think you're trying to impeach the witness and with a prior inconsistent statement, you're not laying a proper foundation. You can't show him the transcript. You have to elicit the testimony first.

MR. CUNNINGHAM: I just did. All right. I got your objection. No, I just did, I just did. I got what I need.

MR. ROBINSON: Well, my objection stands.

MR. CUNNINGHAM: Yes. Got you. Okay. Well, just to be safe.

BY MR. CUNNINGHAM:

Q. Do you recall testifying at the preliminary examination that Andre Jackson provided you with the name Michael Owens independent of the Detroit Police Department -- Michael Owens Oliver?

A. I don't remember that.

Q. Okay. Was your recollection of these events more clear in August of 2019 than it is today?

A. I'm -- I can't say. I'm sure that it probably was.

Q. Okay. All right. So now I'm going to ask you to look at the transcript, and there's a question asked of you.

MR. ROBINSON: Same objection, Pat. Go ahead.

MR. CUNNINGHAM: Got you.

BY MR. CUNNINGHAM:

Q. Now, you know most of the students that were in your video. And your answer was, I knew most of the students who were in the video. And the question was,

and you provided the names to the police. And your answer was, they didn't really care to have them at that point. And your answer was, okay -- or the question was, okay, which really isn't a question. And your answer was, I did provide the names, as many as I could, to school administration and they dealt with. And, in fact, many of those students didn't report back to school for the rest of the year. Is that true?

A. As best as I can recall.

Q. Okay. And you've already said that two black males were approaching. One of them was Andre Jackson. He is the guy in the black tank top in the video, right?

A. Yes.

Q. All right. And the question was asked of you, and then you said there was a Michael Owens Oliver that approached, as well, and your answer was yes. Then the question was, did you know the name at the time of the incident. No, I did not.

MR. ROBINSON: Wait a second. You did not ask your question. You just made a statement, and the witness did not respond.

MR. CUNNINGHAM: Yeah, I know. I haven't asked him a question yet.

MR. ROBINSON: We can't know that. I mean,

again, that's totally improper, but you go ahead.
MR. CUNNINGHAM: Okay.
MR. ROBINSON: I object to the form.
BY MR. CUNNINGHAM:
Q. And the question was asked of you, when did find out that name, meaning Michael Owens Oliver. And your answer was from Andre Jackson. Do you recall that now? Does that refresh your recollection?
A. I'm not sure. I have so many kids that I deal with, and I'm not sure where that name came from.
Q. Okay.
A. I can't recall if Andre Jackson was even present in school after that. I mean, this was years ago.
Q. When you identified Michael Oliver at the preliminary examination, did anybody pressure you to do that?
A. No.
Q. Did anybody coerce you to do that? Did anybody -- well, let's just leave it as coerce. Did anybody coerce you to do that?
MR. ROBINSON: I'm going to object to the form of the question. You're leading the witness, Pat.
MR. CUNNINGHAM: I don't think -- how is that -- okay. I disagree.
BY MR. CUNNINGHAM:

Q. Did anyone coerce you into identifying Michael Oliver at the preliminary examination?
A. I would say no, no, nobody coerced me.
Q. Did anybody offer you anything if you identified Michael Oliver at the preliminary examination?
A. No.
MR. CUNNINGHAM: I don't have any more questions. Thank you, Mr. Cassani.
MR. ROBINSON: I have a couple brief questions, Mr. Cassani.

EXAMINATION

BY MR. ROBINSON:
Q. After you told, over the phone, Officer (sic) Bussa the identity of the other gentleman that was in the video with the guy in the red hoodie, would you have done so because you felt that that would be a way to clue Officer Bussa in to how it is he might go about getting the actual guy that smashed your phone?
A. Yes, I gave Detective Bussa an e-mail along with the video that said I did know Andre Jackson was the other gentleman in the video.
Q. Logically doing so, you would think that Bussa would go out and talk to Andre Jackson so that Andre Jackson could tell him who the guy in the red hoodie was, right?

A. Yes, sir. That was my understanding.
Q. All right. I think they called that a lead in the Dick Tracy world, that you provided to Officer Bussa, but he didn't follow up on it, I take it, right?
A. Well, sir, the detective world and Dick Tracy is well before my time.
MS. FORBUSH: I'm going to object to foundation. He doesn't know what Bussa did.
MR. ROBINSON: That's true, but I do.
BY MR. ROBINSON:
Q. In the six-pack that we're showing you, those pictures were a very poor quality, I think you said earlier, right?
A. Yes.
Q. Now, had you ever heard anything from your interaction with Officer Bussa that facial recognition had been used?
A. I don't recall.
Q. I think you indicated that you were told by Bussa that the perpetrator was, in fact, in the lineup -- in the photo lineup, correct?
A. Can you repeat the question, sir?
Q. I think you had indicated in your examination with Mr. Cunningham that Bussa told you that the person who actually committed the crimes was in the lineup.

MR. CUNNINGHAM: Objection. That mischaracterizes his prior testimony.
BY MR. ROBINSON:
Q. Do you recall using the word perpetrator? You were told the perpetrator was in that six-pack?
A. Yes.
MR. CUNNINGHAM: I'm going to object. That's a compound question.
BY MR. ROBINSON:
Q. You said yes, sir? Is that correct, Mr. Cassani?
A. Yes, Detective Bussa said that the perpetrator was in the lineup.
Q. Okay. If you recall, between the phone call (inaudible).
(Discussion off the record at 5:28 p.m.)
(Back on the record at 5:28 p.m.)
BY MR. ROBINSON:
Q. Mr. Cassani, between your e-mail and communicating to Bussa the video and the identity of Andre Jackson, do you recall how much time passed between then and when it is you went in and were submitted to the photo lineup?
A. No, I do not.
Q. Do you recall whether or not it was maybe within a matter of a week or so or perhaps less? It wasn't the

same day, in other words?
A. It was not the same day, and it was, to the best of my recollection, weeks or even months, but I don't remember precisely.
MR. ROBINSON: Okay. Mr. Cassani, I don't have any other questions, and I thank you so much for your testimony.
MR. CUNNINGHAM: I have a couple more.

RE-EXAMINATION

BY MR. CUNNINGHAM:
Q. So earlier, Mr. Cassani, I think the words that you said were, it wasn't a trick. That's what you recall them saying to you during the photo lineup; is that right?
A. Yes.
Q. Okay. And I believe I asked you if you could recall anybody telling you the perpetrator was in the lineup and your response was, they said it wasn't a trick; is that accurate?
A. Yes.
Q. Okay. Can you recall anybody telling you the perpetrator is in the lineup?
A. I don't recall the exact wording that either of the detectives used. I just recall I was taking a long time to make a selection, and I remarked that it was

very hard to see as the photos were so small and black and white. And they said something to the effect of, well, he's in there, it's not a trick.
Q. Okay.
A. Exact wording, I do not recall.
Q. Okay. Who is it that made that remark to you?
A. I don't recall. It was obviously one of the two gentlemen, Detective Bussa and the other police officer, that was there. There were only two in the area at the time.
Q. And do you know which one it was that suggested that it wasn't a trick to you?
A. No, that's what I'm saying. I can't recall which one of them said that.
MR. CUNNINGHAM: Thanks. I have no more questions.
MR. ROBINSON: No questions.
MS. FORBUSH: You're all set, sir.
MR. CUNNINGHAM: Thank you, Mr. Cassani.
THE WITNESS: Thank you.
(The deposition was concluded at 5:32 p.m. Signature of the witness was not requested by counsel for the respective parties hereto.)

CERTIFICATE OF NOTARY

STATE OF MICHIGAN )
) SS
COUNTY OF MONROE )

I, LAURIE R. MAYER, certify that this deposition was taken before me on the date hereinbefore set forth; that the foregoing questions and answers were recorded by me stenographically and reduced to computer transcription; that this is a true, full and correct transcript of my stenographic notes so taken; and that I am not related to, nor of counsel to either party nor interested in the event of this cause.

LAURIE R. MAYER, CSR-5385
Notary Public,
Monroe County, Michigan

My Commission expires: August 9, 2025

**Exhibits**

**EX 0002 Stephen Cassani 092722**
3:18 19:3

**1**

**1**
16:20
**100**
9:2,3
**14**
23:19
**15**
22:14

**2**

**2**
19:3
**2018**
7:7
**2019**
7:10,12,15,22 8:1,5 19:11 21:25 22:8 23:13 24:14
**2022**
4:2
**26th**
23:13
**27**
4:2

**3**

**30**
11:9
**3864**
19:13

**4**

**40**
11:9
**4:39**
4:3
**4:50**
11:2,3

**5**

**5**
15:25 20:25
**50**
5:24
**5:02**
16:11,12
**5:28**
29:15,16
**5th**
19:11

**6**

**6**
19:18
**6th**
21:25 22:8

**9**

**911**
9:4,5,7 11:16

**A**

**ability**
17:13
**able**
9:16 20:2,7 21:22
**Absolutely**
18:4
**Academy**
7:13,24
**accurate**
12:9
**actual**
12:23 27:18
**administered**
13:25 14:1
**administration**
6:16,20 25:6
**afternoon**
4:10
**ago**
22:25 26:13
**agreed**
12:25
**ahead**
18:13,20 24:20 26:1
**Andre**
10:6,8,20,23 11:6 12:25 13:6 22:17,23 24:9 25:12 26:7,12 27:20,23 29:19
**answer**
5:19 14:15 24:24 25:2,3,5,17 26:7
**answers**
5:2,3
**anybody**
10:2,24 11:7 15:14 23:1 26:15,17,18 27:4
**anyone**
14:7,10,17,20 15:3,7,15 16:1 23:1 27:1
**appreciate**
12:7
**approached**
10:7 19:18 25:17
**approaching**
25:12
**approximately**
11:9
**around**
9:14
**array**
13:21,23
**arrest**
21:22,25 22:3,5
**arrived**
11:15,19 13:18
**asked**
12:21 17:3 24:17 25:15,24 26:5
**associate's**
6:7,9
**assume**
5:20 20:19
**assumed**
20:17
**attached**
13:4
**attachment**
13:5
**attempt**
9:14
**attend**
6:4
**attorney**
4:12
**August**
23:13 24:14
**Avenue**
8:13
**aware**
9:10 11:7

**B**

**bachelor** 6:15
**bachelor's** 6:7,13,16
**back** 7:7 10:15 11:3 16:12 25:8 29:16
**basically** 12:21
**basis** 18:16
**belief** 18:3,10
**believe** 10:13,20,24 17:2 21:3 22:9
**besides** 10:23 11:6 15:1
**best** 5:9,18 12:21 17:12 18:3, 10,19 25:10
**bit** 19:2 22:12
**black** 14:23 22:20 25:11,13
**Boulevard** 8:14
**Breaking** 19:23
**Brian** 21:18
**brief** 27:9
**broken** 19:24
**business** 6:12,16,20 7:16
**Bussa** 4:13 12:16, 18,20 13:3, 10,12,20,24 14:2,3 20:4, 5,10,11,13, 15 27:13,17, 19,22 28:3, 8,16,19,24 29:11,19
**busted** 10:19

**C**

**call** 11:13,16 13:9 17:2 29:13
**called** 4:6 9:4,5 12:16,18 13:12 28:2
**capture** 9:15,16,25
**car** 8:11,12,13, 17,23,25 10:2,15
**care** 25:2
**Carleton** 4:1
**case** 10:19 17:22 19:23,24 23:13
**Cass** 7:3
**Cassani** 4:5,11,19,20 5:23,25 18:18,24 19:6,12,17 20:1,7 22:10 23:5,15 27:8,10 29:10,18
**Cassani's** 19:20
**cell** 7:23 10:9, 11,15,16 17:25 19:18, 20 20:2,8 21:4 22:22
**certification** 23:7
**changed** 21:6
**circumstances** 19:10
**City** 4:12
**classes** 7:20,21
**clear** 24:14
**clearer** 5:18
**clearly** 21:12
**clue** 27:17
**coerce** 26:17,18,19 27:1
**coerced** 27:3
**college** 6:4,10
**color** 21:9
**come** 13:13
**committed** 28:25
**communicating** 29:18
**Community** 6:24
**compound** 29:8
**Computer** 7:16
**conclude** 9:11
**concluded** 9:13
**contact** 13:10
**conversation** 5:5 9:11,13 20:23 23:1
**correct** 12:10 28:21 29:10
**couple** 27:9
**Cracked** 10:19
**crime** 13:11 17:1
**crimes** 28:25
**criminal** 17:21
**Cunningham** 4:10,11,16 11:5 14:14 15:6 16:8, 13,19,21 18:6,8,14, 17,22 19:5 24:1,5,7,21, 22 25:23 26:2,4,23,25 27:7 28:24 29:1,7
**Cyber** 7:14

**D**

**damaged** 10:16,18 21:4
**date** 7:25 8:3 12:17 21:25

**Dave**
19:3
**day**
12:14
**deal**
26:9
**dealt**
25:6
**defendant**
17:22
**degree**
6:7,8,9,13, 15,17,19
**department**
16:17 24:11
**depicted**
22:18
**deposition**
4:20
**depositions**
5:1
**describe**
8:9
**desktop**
16:6
**details**
19:7
**detective**
4:13 12:16, 18,20 13:3, 10,12,20,24 14:2,3 20:3, 5,10,11,13, 15 27:19 28:5 29:11
**Detroit**
4:12 6:24,25 7:4,9 13:11 23:2 24:10
**Dick**
28:3,5
**different**
21:12
**differently**
18:7
**difficult**
5:8,15 14:22
**disagree**
26:24
**discipline**
6:11
**discuss**
12:20
**discussion**
11:2 29:15
**District**
6:24
**document**
18:24 21:21 23:5,6,9
**doing**
27:22
**Donald**
4:13
**driven**
8:19
**duly**
4:7

**E**

**e-mail**
13:4 27:19 29:18
**earlier**
28:12
**easier**
5:11
**education**
6:2,6
**effect**
15:11
**elicit**
23:24
**employed**
6:21,23
**end**
13:3
**engaged**
9:4
**estimate**
12:4,5,8
**events**
24:13
**eventually**
9:7
**exact**
7:25 8:3 12:8,17 15:15
**exactly**
12:23
**examination**
4:15 17:4,6, 15 21:8 23:10,12 24:9 26:15 27:2,5,11 28:23
**examined**
4:9
**Exhibit**
16:20 19:3

**F**

**face**
16:22
**facial**
21:11 28:16
**fact**
12:7 25:7 28:20
**fair**
5:11,21
**features**
21:11
**felt**
15:17 27:16
**fight**
19:14
**fighting**
9:3,4
**filed**
4:13
**filming**
19:17
**find**
26:5
**first**
4:7 8:2 13:9 19:9 23:25
**five**
7:6 12:6
**follow**
28:4
**follows**
4:9
**FORBUSH**
28:7
**form**
14:12 18:5, 16 26:3,21
**found**
14:22
**foundation**
23:23 28:8
**front**
19:13
**full**
21:9
**fumbling**
9:14
**future**
12:16

**G**

**gave**
27:19
**gentleman**
22:19 27:14, 21
**getting**
27:18
**give**
5:3,10,19 18:15
**given**
4:20
**glitch**
5:16
**going**
4:25 16:4,9 18:15,23

19:2,3,9 21:21 22:12 23:5,18,20 24:16 26:20 28:7 29:7
**Good** 4:10
**grabbed** 10:9 19:20
**grabbing** 12:24
**grade** 7:19
**grades** 7:20,21
**graduate** 5:25
**Grand** 8:14
**greeted** 13:20
**group** 11:9
**guess** 8:2
**guy** 10:23 11:6 25:13 27:15, 18,24

**H**

**half** 16:10
**hand** 10:10 12:24 19:21
**happen** 10:21
**happened** 9:5 10:4,11 11:13 12:21 13:18 16:23
**hard** 5:17
**head** 5:6
**hear** 5:14
**heard** 5:20 28:15
**hey** 10:13
**high** 5:25 6:2,6 7:3,17
**hold** 9:6
**holding** 9:18,22
**honestly** 20:20
**hoodie** 27:15,24

**I**

**ID'ED** 19:19
**identification** 13:13,14 18:2,18
**identified** 15:24 17:17 22:3 23:2 26:14 27:4
**identify** 17:24
**identifying** 27:1
**identity** 10:7 27:14 29:19
**impeach** 23:21
**implication** 15:12
**improper** 26:1
**inaudible** 11:1 29:14
**incident** 7:22 8:9,10, 22 9:10 10:25 11:8 12:12,15,23 16:17 19:17 22:23 25:19
**inconsistent** 23:22
**independent** 24:10
**indicate** 15:17
**indicated** 28:19,23
**individual** 21:13
**information** 7:13 18:19
**informed** 13:20
**initial** 13:9
**initially** 14:22
**interaction** 28:15
**interviewed** 20:13,15,21
**investigation** 19:7 20:1
**investigator's** 18:25
**involvement** 16:25
**iphone** 19:18

**J**

**Jackson** 10:6,8,20,23 11:6 12:25 13:6 22:17, 23 24:9 25:12 26:7, 12 27:20,23 29:19

**K**

**kids** 26:9
**knew** 24:24
**know** 5:7,18 10:7 11:11,21 20:5 24:23 25:18,23,25 27:20 28:8
**knowledge** 17:19 18:3, 10,19
**known** 13:1

**L**

**large** 9:2 19:14
**lawsuit** 4:13
**laying** 23:23
**lead** 28:2
**leading** 14:13 26:21
**leave** 26:18
**left** 16:24
**left-hand** 22:14
**life** 17:20
**lineup** 13:25 14:3, 6,8,11,18, 21,24 15:4, 8,13,19,20, 22 16:2,22

20:24 21:1 28:20,21,25 29:12,22
**little** 19:2 22:12
**located** 8:12
**Logically** 27:22
**long** 7:4 9:22 16:10
**look** 18:23 23:18 24:16
**looked** 11:23
**looking** 14:4 16:6 20:1
**looks** 22:13
**lot** 5:11 19:13
**loud** 5:4

**M**

**made** 14:20 18:2, 4,9,18 25:21
**make** 5:10,16 19:10,11
**male** 10:7,8
**males** 10:6 25:11
**man** 17:17 21:16, 17
**mark** 16:19 19:3
**master's** 6:8,17,19,20
**matter** 29:25
**mean** 12:2 25:25 26:13
**meaning** 26:6
**meant** 5:8
**melee** 9:2
**memory** 15:23,24
**met** 21:7
**Michael** 4:13 16:1 17:15,17 19:19 21:3 22:4,7 23:3, 14 24:10,11 25:16 26:6, 14 27:1,5
**Michigan** 4:1 6:14,18 23:14
**mind** 21:6
**minute** 16:10
**mischaracterizes** 29:2
**mix** 7:20,21
**month** 8:7

**N**

**name** 4:11,17 11:21 21:14 22:4,5 24:10 25:18 26:6, 10
**names** 11:11 25:1,5
**narrative** 13:5
**need** 5:3 24:3
**needed** 13:12
**never** 17:19
**nod** 5:6
**normal** 5:4
**number** 12:8 15:25 20:25

**O**

**oath** 17:10
**object** 18:5 26:3,20 28:7 29:7
**objection** 14:12 18:9, 11,12,16 23:21 24:2, 4,19 29:1
**observed** 19:14
**offer** 27:4
**office** 17:3
**officer** 11:21,23 12:15 14:1 27:13,17 28:3,16
**officers** 11:25 14:24
**okay** 6:21 7:9,22 8:2,9,22,25 9:11,18,22 10:11 11:18 12:7,14,18 13:9,18,24 15:3,14 16:8,25 17:5,8,21 18:23 19:4 20:13,18,24 22:17 23:9 24:5,13,16 25:3,4,11 26:2,11,24 29:13
**Oliver** 4:14 16:1 17:15,18 19:19 21:3, 10 22:4,8 23:3,15 24:11 25:16 26:6,14 27:1,5
**one** 9:18 10:6 14:24 15:25 16:1 22:17, 20 25:12
**operate** 5:1
**operator** 9:7
**opportunity** 21:8
**original** 11:16
**outside** 7:23
**Owens** 22:4,7 24:10,11 25:16 26:6

**P**

**p.m.** 4:3 11:2,3 16:11,12

29:15,16
**page**
23:19
**paraphrasing**
15:2
**part**
19:1,6 20:8
**particular**
6:11 7:19
**passed**
29:20
**Pat**
15:5 24:19 26:22
**Patrick**
4:11 23:20
**people**
9:3 16:2 22:17 23:14
**perpetrator**
12:13,24 14:6 15:4,7, 13 28:20 29:4,5,11
**person**
13:1,7,22 15:18,24 17:16,19,24 20:25 21:3 23:3 28:24
**personal**
17:18
**phone**
7:23 9:14, 19,23 10:9, 11,14,15,16, 24 11:7 12:24 13:8,9 17:25 19:18, 20,23,24 20:2,8 21:4 22:22 27:13, 18 29:13
**phonetic**
21:18
**photo**
13:21,22
20:25 21:10 28:21 29:21
**photograph**
22:7
**pick**
14:7,10,17 15:20,22
**picked**
16:22 20:24
**pictures**
14:22 28:11
**place**
8:10 13:16 23:20
**play**
16:9
**please**
4:18 5:9,17
**point**
8:20 12:16 13:22 25:3
**pointed**
12:12
**police**
11:13,15,18 12:11,15 13:11,17,18 14:1 16:16 23:2 24:10 25:1
**poor**
28:12
**precisely**
12:1,2
**preliminary**
17:4,5,15 21:7 23:10, 12 24:8 26:14 27:2,5
**present**
14:2,24 26:12
**pressure**
26:15
**prior**
23:22 29:2
**probably**
24:15
**process**
10:16
**proper**
23:23
**property**
8:19
**prosecutor**
21:7,14
**prosecutor's**
17:3
**provide**
25:5
**provided**
16:16 20:3, 10,11 24:9 25:1 28:3
**Public**
6:24,25 7:5, 9

**Q**

**quality**
28:12
**question**
5:5,13,14, 16,18,19,20 8:2 11:4 14:13,16 15:5 24:17, 25 25:4,15, 18,21,24 26:5,21 28:22 29:8
**questions**
5:1 27:8,10
**quite**
8:15 14:23

**R**

**reached**
10:9 19:19
**read**
19:9
**reading**
19:11
**recall**
11:23,25 12:8,11 14:20,25 15:2,3,7 20:21,22 24:8 25:10 26:7,12 28:18 29:4, 13,20,24
**receive**
6:6
**recognition**
28:16
**recognize**
16:14
**recollection**
4:25 12:3 21:19 24:13 26:8
**record**
4:17 5:3 11:2,3 16:11,12 29:15,16
**recording**
9:19,23 10:4
**recount**
12:21
**recover**
20:2,7
**red**
27:15,24
**refresh**
4:25 21:18 26:8
**related**
13:11
**relayed**
12:12
**relying**
15:23
**remember**
4:24 7:25 8:3,5,7,15

9:24 11:12 12:17 13:17 14:19 15:9, 10,16 20:20 21:15 22:24 24:12
**repeat** 11:4 14:16 28:22
**report** 9:9 18:25 21:23,25 22:3,5 25:8
**representing** 4:12
**respect** 16:25
**respond** 25:22
**response** 11:16
**responses** 5:10
**rest** 25:8
**right** 7:17 16:8 19:11 21:22 22:3,10,19 23:12,16 24:1,16 25:13,15 27:25 28:2, 4,13
**Robinson** 14:12 15:5 18:5,11,15, 20 19:4 23:20 24:4, 19 25:20,25 26:3,20 27:9,12 28:9,10 29:3,9,17

**S**

**safe** 24:6
**says** 18:25 19:6 20:7,10,13, 24 22:1,5,14 23:6,9
**scene** 11:15
**school** 5:25 6:2,6 7:2,3,12,17 8:19 25:6,8 26:13
**Schoolcraft** 6:10
**Schools** 6:24,25 7:5, 10
**screen** 10:19 16:4 19:23,24
**scroll** 19:2 22:12
**seated** 17:21
**second** 25:20
**seconds** 22:14
**Security** 7:14
**see** 16:5,7 18:24 19:1,6 21:22 22:1,4,10,13 23:6,9
**send** 12:25
**sending** 13:3
**sentence** 19:9
**September** 4:2
**Serma** 21:18
**several** 21:10
**shake** 5:6
**share** 16:4 21:21
**show** 23:5,23
**showing** 28:11
**sic** 7:7 18:9 27:13
**side** 22:14
**sir** 5:12,22 9:21 28:1,5,22 29:10
**six-pack** 20:25 28:11 29:5
**small** 14:23
**smashed** 10:23 11:7 22:22 27:18
**speak** 9:7 11:18
**spoke** 11:21,25 12:14
**spot** 20:25
**stands** 24:4
**started** 9:14 10:4 19:17
**starting** 23:19
**state** 4:17 23:14
**statement** 13:6 19:15, 21 20:4,14, 16,19 23:22 25:21
**station** 13:17,19
**Stephen** 4:5,19 19:12
**Steve** 23:15
**stole** 21:4
**stolen** 22:22
**stopped** 8:23,25
**street** 8:17,25
**streets** 8:16
**students** 9:2 10:13 11:9 24:23, 25 25:7
**subject** 21:6
**subjects** 7:16
**submitted** 29:21
**successful** 10:5
**suggest** 14:7,10,17 16:1
**suggestion** 14:20
**sure** 11:6 12:4 14:17 19:2, 10,11 24:15 26:9,10
**suspect** 19:19
**sworn** 4:7

## T

**take** 7:7 13:16 28:4
**taken** 7:23 17:25 21:9 22:8 23:13
**taking** 5:2
**talk** 22:23 27:23
**tank** 22:20 25:13
**taught** 7:19
**teach** 7:2
**teacher** 7:1,4,9 10:14
**teaching** 7:12,15
**Technical** 7:3
**Technology** 7:13
**telephone** 12:18 20:23
**tell** 14:3 17:10, 12 27:24
**telling** 15:3
**testified** 4:9
**testify** 4:7 17:8
**testifying** 24:8
**testimony** 4:20 5:3 23:24 29:2
**Thank** 27:8
**thing** 5:13 20:22
**things** 5:8 9:18
**think** 9:22 13:22 15:15 16:9 22:24 23:21 26:23 27:22 28:2,12,19, 23
**thinking** 9:19
**thought** 9:17 15:19, 23
**three** 12:6 22:25
**threw** 10:15 19:21
**time** 8:22 12:14 25:18 28:6 29:20
**times** 4:23
**titled** 21:22
**today** 24:14
**told** 12:11 13:7, 12 15:7 27:13 28:19, 24 29:5
**top** 19:1 22:20 23:7 25:13
**totally** 26:1
**Tracy** 28:3,5
**transcribe** 5:9
**transcribed** 5:2
**transcript** 23:13,18,24 24:17
**transfer** 6:12
**trick** 14:5,25 15:1,11,18
**true** 18:2,9,19 19:14,21,23, 24 20:4,8, 11,14 21:1 25:9 28:9
**truth** 4:7,8 17:10, 12
**try** 16:4,5
**trying** 15:17,18 23:21
**Tuesday** 4:2
**two** 10:6 22:17 25:11
**two-sentence** 13:5

## U

**uh-huh** 5:7
**uh-uh** 5:7
**understand** 5:14,17
**understanding** 28:1
**understood** 5:20 15:12
**University** 6:14,18

## V

**vacant** 19:13
**vehicle** 10:8,9 19:12,20
**verbal** 5:4
**verbally** 5:10
**versus** 23:14
**vicinity** 11:10
**victim** 19:12
**video** 9:15,16,25 10:4 12:22, 25 13:1,4,7 16:5,7,9,14, 16 20:2,8 21:9 22:10, 15,18 23:3 24:24,25 25:13 27:15, 20,21 29:19
**view** 21:8
**viewing** 14:24

## W

**Wait** 25:20
**walking** 12:13
**want** 8:13
**Warren** 8:13 19:13
**watching** 9:4

**way**
5:1 8:15
27:16
**week**
29:25
**went**
29:21
**West**
8:14 19:12,
13
**Westside**
7:13,24
**when's**
12:14
**white**
14:23
**witness**
4:6 11:4
23:15,22
25:22 26:21
**witnessed**
10:20,25
11:8
**woman**
21:16
**word**
29:4
**words**
5:4,10 15:15
**world**
28:3,5
**written**
20:3,14,15,
19

**Y**

**Yeah**
25:23
**year**
8:5 25:8
**years**
7:6 22:25
26:13
**young**
9:3

**Z**

**Zoom**
5:14